***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Denial of Benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Defendant-employer was an approved self-insured with Key Risk Management Services acting as its servicing agent at all relevant times.
4. Plaintiff's average weekly wage was $327.88 per week, yielding a compensation rate of $218.60 per week at all relevant times.
5. The onset of plaintiff's alleged occupational disease was October 22, 1998.
6. The issues to be determined by the Commission are as follows:
 a) Whether plaintiff developed an occupational disease while in the course and scope of her employment with defendant-employer.
b) If so, what, if any, benefits is plaintiff entitled to receive?
 ***********
Based upon the record of evidence and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was a fifty-six year old female at the time of the hearing before the Deputy Commissioner. She completed college in the area of early childhood education.
2. Plaintiff worked for defendant-employer since 1988 as a knitter. In this position plaintiff was required to take care of machines by threading the machines with yarn, turning at least 100 dozen socks per shift. To do this she would turn the socks inside out and inspect them for defects, count the socks, tie them in bundles and pack the socks in boxes. Plaintiff was not in a production position but she was expected to keep 25 machines running. Plaintiff was also required to take yarn out of boxes, take the yarn out of its wrapping, and hang it onto a rack. Plaintiff would handle between 100 to 150 spools of yarn 3 times per shift. Plaintiff was also required to push boxes across the floor of the plant. This was a difficult task.
3. Plaintiff began to experience pain in both her hands and wrists in October 1998. Plaintiff told her supervisor of her pain and was told to seek medical attention.
4. Plaintiff first saw Dr. James E. Stanislaw on October 27, 1998 complaining of pain in both her hands and wrists, right worse than left. Dr. Stanislaw ordered an EMG and nerve conduction studies which revealed bilateral carpal tunnel syndrome, the right worse than the left. Dr. Stanislaw recommended right carpel tunnel release surgery.
5. Plaintiff went to see Dr. Stephen G. Fleming for her continued pain on December 10, 1998. Dr. Fleming confirmed plaintiff's diagnosis of bilateral carpal tunnel syndrome. Dr. Fleming performed a bilateral carpal tunnel release on plaintiff on or about December 16, 1998. Plaintiff was totally disabled following the surgery for 8 weeks.
6. Plaintiff returned to work for defendant-employer on February 22, 1999 to her same job earning the same wages as she was making at the time of her surgery.
7. In a letter to the Industrial Commission, Dr. Stanislaw stated that he was of the opinion that plaintiff's work for defendant-employer put her at an increased risk of contracting carpal tunnel syndrome than members of the general public not so employed. He stated that due to his limited treatment and interaction with plaintiff he could not state that there was a direct casual link between plaintiff's job and her carpal tunnel syndrome.
8. Dr. Fleming stated that plaintiff's employment contributed to the development of her carpal tunnel syndrome and the worsening of these symptoms. Dr. Fleming further stated that based on plaintiff's history and the findings, it is very likely that plaintiff's symptoms were strongly related to her work with defendant-employer.
9. The Full Commission gives greater weight to the causation opinion of Dr. Fleming than that of Dr. Stanislaw based on the fact that Dr. Fleming performed plaintiff's carpal tunnel release surgeries and treated plaintiff over an extended period of time in contrast to Dr. Stanislaw only seeing plaintiff on two occasions.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff developed the occupational disease of bilateral carpal tunnel syndrome as a direct result of her position with defendant-employer. Plaintiff's employment placed her at an increased risk of developing the occupational disease as compared to general population not so employed. N.C. Gen. Stat. § 97-53(13).
2. As the result of the compensable occupational disease, plaintiff was disabled and is entitled to receive total disability benefits at the rate of $218.60 per week from October 22, 1998 through February 22, 1999. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to the payment of the medical expenses incurred for the treatment of her bilateral carpal tunnel syndrome and any further treatment that tends to effect a cure, give relief and/or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25; -25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability benefits at the rate of $218.60 per week beginning October 22, 1998 and continuing through February 22, 1999. All accrued compensation shall be paid in one lump sum.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable occupational disease.
3. Defendant shall pay the costs of this action.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER